Daniels, J.
The action was brought to restrain the making and execution of a contract for paving Fifth avenue.
It was alleged in support of it that the proceedings taken for that purpose were in violation of the authority created by chapter 371 of the Laws of 1885, providing for the pavement of the avenue.
The commissioner of public works did advertise for plans and proposals, with specifications annexed for the work, as that was required by the first section of the act, and plans and proposals were presented and submitted in compliance with the advertisement to the mayor, comptroller and commissioner of public works of the city, and from them this board selected the plans and proposals of the defendant, Mathew Baird, as the best adapted to carry out the design and object of the act. But it has been urged to sustain the *419 plaintiff’s appeal that they faüed in material respects to comply with the authority created by the statute, that instead of securing by the plans, proposals, specifications and contract the performance of the work by the use of granite blocks of the best material, they have allowed granite blocks of a durable and sound quality to be used. But the commissioners acted upon the understanding that this description of granite blocks was the same as that mentioned in the advertisement, as granite blocks of the best material, and the fact has not been established that granite blocks of a durable and sound quality would be in any respect inferior to granite blocks of the best material. And for that reason the conclusion is warranted that the commissioners did not depart from the notice which was given in selecting the plans, proposals and specifications and making the contract for the pavement.
In this respect the statute conferred ample authority on the commissioners to justify their action. For it did not require. the pavement to be of any other quality than “granite blocks,” and it was to secure the best description of pavement of the best material and workmanship that the notice was required to be advertised in the City Becord by the commissioner of public works. The act itself in this respect afforded ground for the exercise of the discretion made use of by the commissioners. And it is to be presumed from what appears to have taken place, that in their judgment the pavement of the street with granite blocks of a durable and sound quality will secure a pavement to be made of the best material.
The plans, proposals and specifications were so drawn as to permit the crosswalks on the street to be constructed of blue stone equal to the best quality of North river blue stone, free from seams and imperfections. And the contractor entered into an agreement on his part to construct the crossings of that material. It is true that the act Contains no provision relating to crosswalks in the street, and it is equally so that the discretion of the commissioners was not so abridged as to exclude them from exercising this authority. What the legislature designed by the act was the pavement of the street, so far as that was necessary and appropriate by the use of the granite blocks, and where it should not be necessary and crosswalks should be required to permit the commissioners to provide for the construction of such walks. And as they could not be constructed of granite blocks as that phrase was used in the act, it was left to the discretion of the commissioners to select the material from which the crossings could best be made. The act did not minutely provide for the manner in which the work should be done throughout, but it contained general *420 directions, leaving the details to be determined upon by the commissioners themselves.
In directing the pavement of the street, it is only reasonable to assume from the language of the act, that it was to be paved as other streets usually are, but in a superior manner and that permitted the laying down of crossings wherever the convenience of the public require them to be laid. It was shown in support of the objections to the selection of the granite for the crossings, that it was not so well fitted for that purpose as the quality of stone provided for in the specifications and agreement. And as the act in no way required granite for the crossings, but only for the blocks, out of which the pavement should be constructed, it necessarily confided the control of this subject of the crossings to the good sense and judgment of the commissioners.
The act further provided that the contract should receive the approval as to its form of the counsel for the corporation, and that it should not take effect, “until a majority of the members of the said board shall certify thereon in writing, that its acceptance will in their judgment best secure the public interests, and the efficient performance of the work therein mentioned.” And it is to be implied from this clause of the section of the act, that when the contract did receive that approval, that it should take effect and become operative as a legal contract for the performance of this work. This clause disclosed the design of the legislature to have been that which has been already attributed to it to confide the manner and details of the work very much to the management of the commissioners. The contract which was entered into was approved as to its form by the counsel for the corporation, and it did receive this certificate of the commissioners themselves.
Further objections were presented to the manner in which the foundation for the pavement was to be constructed and the preparation which the ground itself was to receive, and to the size and use of the granite blocks in certain specified portions of the work, and the subjection of the work itself to the control and approval of the commissioner of public works. But these were all elements of detail which under the act may well be held to have been confided to the control of the commissioners, and no good reason appears for doubting that these details have been well declared and directed. In giving directions for them provision has been made for the approval of the quality and finish of samples of the stone to be furnished for their inspection after they are brought on the line of the work, and for rejecting such as are not strictly conformable to the specifications, and for constructing and laying a concrete *421 foundation, upon which the pavement is to be made to rest, and for a bed of clean, sharps and fjee from moisture covering the foundation, and for laying the blocks and crossings in a thoroughly workmanlike manner.
These safeguards and directions have been adopted as the theory and spirit of the act required that to be done, and while they have been subjected to severe criticisms on the part of the plaintiff, they do not appear to be in any respect defective if they shall be faithfully observed for the execution of this statutory authority. But as the agreement has been made it commended itself to the judgment of the commissioners, and they certify upon it their conviction, that it would best secure the public interests and the efficient performance of the work mentioned in the statute.
The contract provided that the old material, with certain exceptions, should be received and appropriated by the contractor. But that was not an improper thing to include within the agreement, for to that extent the expense of the work would be diminished and the public correspondingly benefited. The proceedings of the commissioners, the agreement which they made, and the plans and specifications adopted by them are such, as the language of the statute permitted, and there was no good ground therefore upon which an injunction to restrain the performance of the work could have been continued by the court.
The object of the motion for leave to serve a supplemental complaint was to make the contractor as well as the city itself parties to the action with appropriate allegations disclosing the facts indicating the necessity of this extension. The order did no more than this. And if the action could be maintained at all, it was necessary that its scope should be enlarged, as that was provided for by the order which was made. As the facts appeared before the court at the time, this order was right and it should be affirmed. But in view of the circumstances that the suit itself was instituted in good faith and upon the conviction that the statute had not been complied with in the proceedings that were taken, both orders should be affirmed without costs.
Brady, J., concurs.